IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WARREN CHASE, #326-514　　　　　　　　　:
　　　　　　　Plaintiff

　v.　　　　　　　　　　　　　　　　　　　: CIVIL ACTION NO. CCB-08-834

THE PRIOR AND PRESENT DOC　　　　　　　:
COMMISSIONERS OF CORRECTION,
et al.,　　　　　　　　　　　　　　　　　　:
　　　　　　　Defendants

### MEMORANDUM

Plaintiff Warren Chase, currently incarcerated at the North Branch Correctional Institution in Cumberland (NBCI), seeks declaratory and injunctive relief[1] and money damages against fifty-two defendants[2] employed by the State of Maryland within the Division of Correction (DOC), alleging that on multiple occasions between April 28, 2005 and March 27, 2008, he was kept alone in his cell twenty-four hours a day despite regulations requiring one hour daily out-of-cell recreation and twice-weekly showers. A dispositive motion filed on behalf of forty DOC defendants (Document 62), construed as a motion for summary judgment, is pending. Plaintiff has supplied an affidavit reiterating the claims set forth in his complaint. (Document 64.) No hearing is required to resolve the issues raised herein.[3] *See* Local Rule

---

[1] Plaintiff seeks inpatient mental health treatment at a facility "outside" the DOC and the return of his radio and earphones. For reasons set forth herein, these injunctive relief requests shall be denied.

[2] Service of process was not obtained over defendants J.A. Bailey, D. Alexander, D. Oliver, A. Scott, S. Phillips, M. Winns, H. Talib, T. Brown, T. Brawner, T. Martin, C.N. Peay and Patricia Shearin. For reasons set forth herein had these individuals been served, they would be entitled to summary judgment. Each shall be dismissed by separate order.

[3] Plaintiff 's action must be based on alleged violations of the Constitution, not merely on alleged violations of regulations describing the amount of recreation and shower time to be provided to prisoners. The adoption of mere procedural guidelines, without more, does not give rise to a liberty interest; thus, the failure to follow regulations does not, in and of itself, result in a violation of due process. *See Culbert v. Young*, 834 F.2d 624, 628 (7th Cir. 1987). Regardless of any alleged violations of internal regulations, the law is settled that the failure to follow a prison directive or regulation does not give rise to a federal claim, if constitutional minima are met. *See Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); , 232 F.Supp.2d 117, 123 (S.D. N.Y. 2002).

105.6. (D. Md. 2008).

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that:

> Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to juddgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials

of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

In general, the Constitution does not entitle a prisoner to be held in any particular prison or classified to any particular security level. *See Montanye v. Haymes*, 427 U.S. 236, 243 (1976); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976); *Paoli v. Lally*, 812 F.2d 1489, 1493 (4th Cir. 1987). A liberty interest may, however, be created when state action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Segregation is not per se cruel and unusual punishment. *See In Re Five Percenters,* 174 F.3d 464, 471-72 (4th Cir. 1999); *Allgood v. Morris*, 724 F.2d 1098, 1101 (4th Cir. 1984) (segregated protective custody); *Ross v. Reed*, 719 F.2d 689, 697 (4th Cir. 1983) (administrative segregation). Following the reasoning of the Supreme Court in *Sandin*, it appears that no liberty interest is implicated in placement on segregation. *See Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997); *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996).

In order to raise an Eighth Amendment challenge to prison conditions, a plaintiff must produce "evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Prison officials cannot be held liable for violating the Eighth Amendment unless they knew of, and then disregarded, an excessive risk to inmate health or safety. See *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

**Analysis**

Plaintiff is a long-standing disciplinary segregation prisoner who, by his own admission, will be serving disciplinary segregation sentences until 2028.[4]  In his complaint, plaintiff alleges the lack of weekly showers and lengthy segregation sentence amount to "psychological torture" and that he is withdrawn and suffers depression, weight loss, migraines, vision loss from lack of natural sunlight, and other ailments.

Defendants have provided evidence concerning plaintiff's movement among prisons since his return to incarceration on March 16, 2005.  Upon entering the system, plaintiff was placed in general population at the Maryland Reception Diagnostic Classification Center (MRDCC).  That same day, he was placed on administrative segregation.  Two weeks later, on March 31, 2005, he was placed on disciplinary segregation status at MRDCC.  Document 62-3 at 8.

On April 28, 2005, plaintiff was transferred to Eastern Correctional Institution (ECI) on disciplinary segregation status.  *Id*. at 7.  He was placed in general population on May 20, 2005, but again moved to disciplinary segregation on June 7, 2005.  *Id*. at 6-7.  He returned to general population on February 7, 2006, and within weeks was returned to displinary segregation on March 2, 2006.  *Id*. at 5.  The pattern continued, with plaintiff moving to general population on April 8, 2006, and returning to disciplinary segregation on April 23, 2006.  *Id*. at 5.

---

[4] The length of time to be spent on disciplinary segregation has increased since Case Manager Casey M. Campbell averred that Chase's segregation time would expire on July 21, 2022.  *Compare* Document 64 at 4 with Declaration of October 28, 2008, Document 16-3, *Chase v. Warden*, Civil Action No. CCB-08-1790.

On August 28, 2006, plaintiff was transferred to MCAC on administrative segregation status.[5] *Id*. at 3.  He was placed in general population on November 29, 2006, and returned to disiplinary segregation on March 8, 2007.  *Id.*

On March 11, 2007, plaintiff was transferred to Western Correctional Institution (WCI) on administrative segregation status.  *Id*. at 2.  One day later he returned to MCAC, and on March 13, 2007, was transferred out-of-state pursuant to the Interstate Corrections' Compact (ICC).  He returned to Maryland and was placed in general population at MCAC on July 18, 2007.  *Id.* at 2.

On April 23, 2008, plaintiff was transferred from MCAC to NBCI.  *Id*. at 1.  Given his poor adjustment and lengthy disciplinary segregation sentences, he is held in Housing Unit #1, which is designated a displinary/administrative segregation and behavioral management program housing area.  *Id*. at 1; see also Campbell affidavit of October 28, 2008, Exhibit No. 1 in *Chase v. Warden*, Civil Action No. CCB-08-1790 (D. Md.).

Plaintiff's claims to the contrary, it does not appear that he has been denied all opportunities for out-of-cell recreation and showers during the times in question, nor does it appear that any deprivations occur in retaliation for plaintiff's litigation activities.[6]  At most, by plaintiff's own admission, it appears that correctional officers do not provide him these opportunities if he is not standing at his cell door ready to leave the moment the "count officers" pass by his cell door.  Document 64-5.  While this practice may be harsh, it does not amount to an impermissible practice.  Further, plaintiff does not demonstrate that he has sought medical

---

[5] From previous litigation the court is aware that Chase was subject to confinement at the Maryland Correctional Adjustment Center ("MCAC"), then Maryland's most secure facility, on August 28, 2006, after he attacked and seriously injured a female officer at another facility.  *See Chase v. Warden*, Civil Action No. CCB-05-2985 (D. Md.).

[6] It is not refuted that administrative segregation inmates have the same mail and commissary privileges as general population inmates.   They are, however, handcuffed when shackled outside their cell, and at most receive limited one-hour period of out-of-cell recreation, two showers per week, a monthly haircut, and a weekly change of linens.

treatment for any health problems brought about by the missed recreational activites or shower privileges.  Moreover, plaintiff has not demonstrated that the current conditions of his assignment to NBCI's segregation unit are significantly more onerous than his previous housing situations.  *See Beverati,* 120 F.3d at 504 (conditions of administrative segregation at Maryland Penitentiary); *Knox v. Lanham*, 895 F. Supp. 750, 753-54 (D. Md. 1995) (administrative segregation at a medium security facility in Maryland).

Accordingly, defendants' dispositive motion shall be granted and summary judgment entered in their favor against plaintiff.  A separate order follows.


  November 20, 2009  
(Date)

        /s/
Catherine C. Blake
United States District Judge